**EXHIBIT 1**

Approved, SCAO

Original - Court      2nd copy - Plaintiff
1st copy - Defendant      3rd copy - Return

| STATE OF MICHIGAN | | CASE NO. |
|---|---|---|
| 10TH    **JUDICIAL DISTRICT**<br>**JUDICIAL CIRCUIT**<br>**COUNTY PROBATE** | **SUMMONS** | 21-043522-CZ-2 |

| Court address | Court telephone no. |
|---|---|

| Plaintiff's name(s), address(es), and telephone no(s). | | Defendant's name(s), address(es), and telephone no(s). |
|---|---|---|
| CHULINDRA COOKS, | v | UAW LOCAL 699,<br>TOM HURST,<br>RHONDA FRITZ,<br>JOSHUA BAUER,<br>and<br>JASON STAVELY<br><br>Jointly and Severally |
| **Plaintiff's attorney, bar no., address, and telephone no.**<br>RICHARD R. VARY (P28517)<br>KEVIN L. KULA (P81913)<br>MASUD LABOR LAW GROUP<br>4449 Fashion Square Boulevard, Suite 1<br>Saginaw, MI 48603     Phone: (989) 792-4499 | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**
- [ ] There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.
- [ ] There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.
- [ ] It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or the family members of the person(s) who are the subject of the complaint.

**Civil Case**
- [ ] This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
- [ ] MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).
- [ ] There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
- [x] A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in [x] this court, [ ] _____ Court, where

it was given case number _____ and assigned to Judge _____ .

The action [x] remains [ ] is no longer pending.

Summons section completed by court clerk.     **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date* | Court clerk |
|---|---|---|
| 9-28-21 | 12-28-21 | Vanessa Guerrn |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01   (9/19)    **SUMMONS**      MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF SAGINAW

CHULINDRA COOKS,

        Plaintiff,

-vs-

UAW LOCAL 699; TOM HURST;
RHONDA FRITZ; JOSHUA BAUER;
and JASON STAVELY,
jointly and severally as,

        Defendants.

Case No. 21-045522-CZ-2

HON. MANVEL TRICE III P63072

---

RICHARD R. VARY (P28517)
KEVIN L. KULA (P81913)
MASUD LABOR LAW GROUP
Attorneys for Plaintiff
4449 Fashion Square Boulevard, Suite 1
Saginaw, Michigan 48603
(989) 792-4499

---

*There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge. I am aware of two other civil actions, not between these parties, arising out of some, but not all, of the same transactions or occurrences as alleged in the instant Complaint. Said other actions are complaints filed by Mr. Craig Everett and Mr. Rick Burzynski against the same instant Defendants. I am unaware of whether those two actions have been assigned at this time.*

## **COMPLAINT AND DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff, CHULINDRA COOKS (hereafter "Plaintiff"), by and through

her attorneys, Masud Labor Law Group, and hereby brings her Complaint against Defendants,

UAW LOCAL 699, TOM HURST, RHONDA FRITZ, JOSHUA BAUER, and JASON

STAVELY, stating as follows:

**MASUD LABOR LAW GROUP**

4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

## BACKGROUND

1.      Plaintiff brings this action against Defendants Local 699, Tom Hurst, Rhonda Fritz, and Joshua Bauer, jointly and severally, and in their official and non-official capacities, for defamation *per se*, defamation by implication, conspiracy to defame, false light invasion of privacy, and intentional infliction of emotional distress.

2.      Additionally, Plaintiff brings this action against Defendant Jason Stavely for defamation *per se*, defamation by implication, and intentional infliction of emotional distress.

3.      Additionally, Plaintiff brings this action against Defendant Local 699, Defendant Hurst, and Defendant Fritz for racial harassment, racial discrimination, retaliation, and conspiracy to discriminate/retaliate in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101 *et seq.*

4.      Plaintiff brings this action to set the record straight; to vindicate Plaintiff's rights under civil law; to recover compensatory, exemplary, and punitive damages; and to restrain Defendants from engaging in such unlawful conduct.

## CONTROLING LAW, JURISDICTION, AND VENUE

5.      Plaintiff's defamation actions are brought pursuant to Michigan common law and statutory law, i.e., MCL § 600.2911. Plaintiff's retaliation and racial conspiracy claims are brought pursuant to Michigan's ELCRA. Plaintiff's remaining causes of action are brought pursuant to Michigan common law.

6.      Venue is proper under MCL § 600.1621, MCL § 600.1629, and/or MCL § 37.2801 as the injury occurred in Saginaw County, State of Michigan, and additionally, the Defendants reside in and/or conduct business in Saginaw County.

7.      That this Honorable Court has jurisdiction pursuant to MCL § 600.605.

2

8.      That the amount in controversy exceeds the sum of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00), exclusive of costs, interest, and attorney fees.

## COMMON ALLEGATIONS

9.      That Plaintiff is a resident of the County of Saginaw, State of Michigan.

10.     That, upon information and belief, Defendant, UAW LOCAL 699, is a local worker's union organized pursuant to the International UAW's Constitution and its own Bylaws, which are subordinate to said Constitution. Defendant Local 699 is located in and does business in the County of Saginaw, State of Michigan.

11.     That, upon information and belief, Defendant TOM HURST (hereafter "Hurst"), is a resident of the County of Saginaw, State of Michigan, and the immediate-past President of Defendant Local 699 (serving 2018-2021).

12.     That, upon information and belief, Defendant RHONDA FRITZ (hereafter "Fritz"), is a resident of the County of Bay, State of Michigan, and the immediate-past Financial Secretary of Defendant Local 699 (serving 2018-2021).

13.     That, upon information and belief, Defendant JOSHUA BAUER (hereafter "Bauer"), is a resident of the County of Bay, State of Michigan, and is the current union Shop Committeeman for Plant 3.

14.     That, upon information and belief, Defendant JASON STAVELY (hereafter "Stavely"), is a resident of the County of Saginaw, State of Michigan, and is the current Financial Secretary of Defendant Local 699 (serving Spring 2021-present).

15.     That at all times mentioned in this Complaint, Defendants, and others as yet unidentified and unnamed as Defendants, were co-conspirators, agents, or employees of their co-

3

Defendants and in doing the things alleged in this Complaint were acting in concert with each other and within the course and scope of such conspiracy, agency, or employment.

16.     That Plaintiff is a member of a protected class by virtue of her race, African American, and her gender, female.

17.     That Plaintiff is also a military veteran, having honorably served in the United States Air Force.

18.     That Plaintiff was hired by Defendant UAW Local 699 on December 4, 2017, as the Local 699 Secretary.[1]

19.     That Rick Burzynski ("Burzynski") served as the President of UAW Local 699 from 2015 to 2018, and in 2021 entered the Local 699 election for Shop Committeeman at Plant 3.

20.     That from about 2015 to 2018, Local 699 was served by President Burzynski's administration which included Financial Secretary Craig Everett ("Everett") and Plaintiff who both provided inherent operational services regarding, but not limited to, financial matters.

21.     That Plaintiff was the first African-American Secretary to be hired at Local 699.

22.     That Plaintiff performed her job duties as Secretary: a) in the way she was trained by Local 699, b) in accord with the Local 699's long-standing procedures and c) in a satisfactory manner as evidenced by her positive job performance evaluations.

23.     That during the Presidency of Burzynski, Plaintiff suffered no explicit racial discrimination, harassment, or retaliation in performing her job duties as Secretary.

---

[1] The Secretary position is an unelected position subject to the terms and conditions of a Collective Bargaining Agreement between the Local 699 and another union, OPEIU Local 42.

**MASUD LABOR LAW GROUP**
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

24.     That after Hurst became Local 699 President and Fritz became Financial Secretary, Plaintiff suffered explicit racial discrimination, harassment, and retaliation in performing her job duties as Secretary.

25.     That, by way of example, Chulindra Cooks while working at her secretarial position suffered a racist phone call referring to her as a "f**king N***er" (the "N" word) which caused her severe emotional distress and interfered with her employment.

26.     That shortly thereafter, on or about August 5, 2019, Hurst joined in the use of the vile racist "N" word in communicating to Plaintiff fabricated racist stories while Plaintiff was working as Local 699's Secretary.

27.     That Plaintiff complained to Hurst about his conduct and about how offensive his and others use of the "N word" was.

28.     That Plaintiff's complaints about the "N" word incidents were not properly investigated, and no disciplinary, or corrective action was taken, contrary to the duty to do so.

29.     That Hurst and others began to retaliate against Plaintiff after she complained about the racist workplace incidents.

30.     That Hurst and Local 699 then demanded Plaintiff sign a confidentiality agreement covering Plaintiff's employment.

31.     That, upon information and belief, Hurst and/or his co-conspirators communicated false information to others against Plaintiff stating that she lied about the "N" word incidents and/or had sued her previous employer for racism and did not tell Plaintiff about the false accusations.

32.     That Hurst changed and removed Plaintiff from her secretarial job duties including, but not limited to, the well-established process of article submissions for inclusion in the Local

5

**MASUD LABOR LAW GROUP**
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

699's *FIREPOWER* newsletter.  The long-time standard process, which had been applied for all Caucasian secretaries and Plaintiff until her race discrimination complaint, was for submissions to first go to the Secretary before going to the Editor.

33.     That at the September 15, 2019, Local 699 membership meeting, Hurst was confronted about his use of the vile "N" word.  Hurst first denied the allegations, but subsequently, only after being further questioned and pressured by members, admitted to having used the abhorrent "N" word.

34.     That Local 699 edited and/or omitted Hurst's racist "N" word incident from the minutes of the September 15, 2019, membership meeting.

35.     That on October 11, 2019, Plaintiff e-mailed Hurst, stating she was being retaliated against because members had been instructed to send newsletter articles directly to the Editor, bypassing Plaintiff entirely and subverting her secretary job duties and the Local's well-established pattern and practice.

36.     That Plaintiff was laid off in March 2020, purportedly due to the COVID-19 pandemic and Governor Gretchen Whitmer's stay at home orders.

37.     That, in fact, Hurst forced Plaintiff into the layoff, in lieu of working at the Union Hall, by falsely telling her he was closing the Union Hall due to the pandemic.  The Union Hall was not closed.

38.     That Plaintiff was eventually called back to work from said layoff, however, she was called back later than other officers and/or employees.

39.     That on July 10, 2020, Plaintiff filed a charge of discrimination with the Michigan Department of Civil Rights ("MDCR"), alleging Hurst created a hostile work environment,

**MASUD LABOR LAW GROUP**
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

removed her job duties, subjected her to racially motivated comments/remarks, and retaliated against her for opposing these actions.

40.     That thereafter, Hurst and Fritz began to issue a series of fabricated, pretextual, bogus write ups against Plaintiff in retaliation for her protected activity.[2]

41.     That, upon information and belief, Hurst ordered Fritz to target the Plaintiff for firing by generating pretextual disciplinary writeups and she admittedly did so.

42.     That Defendants failed, neglected and/or refused to inform Plaintiff of the pretextual "disciplines" and failed, neglected, and/or refused to provide Plaintiff with a fair opportunity to respond.

43.     That, as an example of one such discipline, Plaintiff received a write up for supposedly using Hurst's signature stamp without his permission, despite using the stamp as she had been trained to do and regularly done in performing her and former secretaries' duties, and despite Plaintiff following the direction(s) of Local 699 Officers.

44.     That Plaintiff's action, which Defendants falsely claimed was "forgery," and/or "fraud" was in accordance with Local 699's well-established past practice, Plaintiff's training, and use by another Caucasian secretary outside of Plaintiff's protected class, in an identical manner without allegations of fraud and/or forgery and/or discipline, and this well-established past practice was utilized for Defendants' own elections.

45.     That Hurst and Fritz continued to foster an environment of racial discrimination and retaliation against the Plaintiff.

---

[2] Defendants have thus far refused to provide Plaintiff with her personnel file despite multiple requests. Upon information and belief, Defendants may have destroyed this file and/or other relevant evidence as part of a cover up. Defendants Hurst and Fritz have made law enforcement complaints about their and/or other Local 699 Officials alleged illegal and or tortious activities involving the handling, removal, or destruction of Local 699's confidential files.

7

46.     That, by way of example, Fritz, made statements about "Black lives don't matter," and told Plaintiff while working that Fritz and her boyfriend had hundreds of rounds of homemade firearm ammunition to be "ready for the coming race war," or words to that effect.

47.     That Local 699 Vice President Winiecke ("Winiecke") and other union officers knew of Fritz's racist statements and described Fritz to Plaintiff as the "racist down the hall," but no proper investigation, discipline, and/or corrective action was taken.

48.     That Defendants terminated Plaintiff's employment on or about October 1, 2020, for the fabricated allegations of forgery and/or fraud, and other bogus charges.

49.     That on or about October 18, 2020, at the Local 699 Union Membership meeting, Burzynski and Everett criticized Defendants and/or made and/or supported membership motions to return Plaintiff to her Secretary position with back pay and to stop the violation of Local 699 Bylaws by issuing improper payments to Winiecke for doing full-time president's work at the Union Hall when then President Hurst was available and should have been performing the work. Burzynski and Everett and other members voted for the motions which the union membership passed.

50.     That Hurst, Winiecke, and Fritz refused to return Plaintiff to her Secretary position, and to stop the violation of Local 699 Bylaws, contrary to the Local 699 membership voting to do so.

51.     That on April 22, 2021, Everett filed charges against Fritz, for misuse of Local 699 Union funds, supplies, and equipment.

52.     That on May 4, 2021, Defendants maliciously, recklessly and/or negligently sought to discredit, silence, stifle, embarrass, and harm their whistle-blowing critics, including Plaintiff, Burzynski, and Everett, and to divert attention from Defendants' own misfeasance and

8

malfeasance. Defendants did so by fabricating, authoring, publishing, and/or authorizing the publication of a UAW Local 699 *FIREPOWER* letter just before the Local 699 election (hereafter "defamatory letter" or "May 4 Letter").  (Exhibit A).

53.     That the *FIREPOWER* is Defendant Local 699's official newsletter publication.

54.     That the May 4, 2021, defamatory letter was published on Local 699's official *FIREPOWER* letterhead.  (Ex. A).

55.     That the May 4, 2021, defamatory letter was purportedly authored and/or authorized in whole or part by Fritz, who signed it, and authorized for posting and dissemination by Hurst, who also signed it.  (Ex. A).

56.     That the May 4, 2021, Letter states false and defamatory statements attributing, or imputing, criminal acts to Plaintiff who was an integral part of Burzynski's "prior administration" and provided services related to allegedly illegal financial transactions and the Union's credit card.

57.     That the libelous letter, for example, includes, but is not limited to, statements claiming or implying that the Plaintiff misappropriated, lost, embezzled, or engaged in the theft of Union funds and/or member dues.  (Ex. A).

58.     That, further, the libelous letter states or implies Plaintiff mishandled rentals of the Union Hall, wrongly handled money, and wrongly used the Union Hall's debit card.  (Ex. A).

59.     That, in an even more blatant targeting of the Plaintiff, the libelous letter states that "Section 501(c)," which "prohibits the embezzlement and theft of property," "***would also apply to employees such as prior secretaries, even from another union.***"  (Ex. A) (emphasis added).

60.     That the above statement directly targeted Plaintiff as she was the prior secretary from another union who served in the prior administration of President Burzynski during the time period when the alleged illegal activities occurred.

**MASUD LABOR LAW GROUP**
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

61.     That the May 4, 2021, defamatory letter was published and disseminated by the Defendants on multiple Internet websites, including Local 699's Facebook page (which is readily accessible to the general public and has 4000 or more followers), the Saginaw Unions No Holds Bar Facebook group, and the Saginaw Unions Transparency Facebook group.

62.     That the May 4, 2021, Letter was foreseeably republished, disseminated, viewed, shared, and commented on.  By way of example, after being posted around noon, the Letter generated forty-three or more comments and twenty-eight or more shares on the UAW Local 699 Facebook page by 2:55 P.M.  (Exhibit B).

63.     That the comments referenced in the preceding paragraph above include, among others, the following:

    i.      "So Cookie and all other Prior officers should be sued since this happened during their regime;"[3]

    ii.     "CROOKED ASS PEOPLE;"

    iii.    "Lock'em all up.  Solidarity my ass.  Real people don't steal from their 'brothers & sisters;"

    iv.     "Nail their asses to the wall;"

    v.      "Hang them high, and watch them fry;" and

    vi.     "[T]hrow them all in prison.  Yes I mean all.  If you were in on this I wish you were going to prison."

(Ex. B).

---

[3] "Cookie" specifically refers to Plaintiff who was an integral part of the operation of the former President Burzynski's prior administration during the time period when the illegal acts were alleged.  This comment establishes the audience understood Defendants' defamatory references were directed at Plaintiff who the membership customarily called "Cookie."

**MASUD LABOR LAW GROUP**
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

64.     That, on information and belief, the May 4 Letter also generated over one-hundred comments in approximately the same timeframe on the two Facebook group pages as well.

65.     That the May 4 Letter was also hand-distributed and posted at Plant 3 by Bauer, in concert with his coconspirators Hurst, Fritz, and others as yet unidentified and not presently named as defendants.

66.     That the May 4, 2021, Letter's defamatory statements were also widely distributed at the other plant sites and the Local 699 Union Hall and were widely repeated and reported upon by local News stations in the Saginaw, Bay City, and Flint area and beyond.

67.     That, at the time Hurst, Fritz, and Bauer authored, authorized, and caused the wide union and public distribution of the defamatory May 4, 2021, Letter, they were actively campaigning against and/or opposing Burzynski in an election for the Plant 3 Shop Committeeman position and/or Everett for the Financial Secretary position and/or opposing Plaintiffs' return to her Secretary position after she was wrongfully terminated and the membership voted to return her to work.

68.     That the 2020 Special Election for Plant 3 Shop Committeeman that was approved and posted by the Local 699 Election Committee pursuant to the customary practice and procedure followed by Local 699 for over 20 years was improperly cancelled by Hurst and the election was delayed until 2021 so that Bauer could be transferred from Plant 6 to Plant 3 so that he could run for election.

69.     That Defendants intentionally, recklessly, and/or negligently fabricated the false statements in the defamatory May 4, 2021, Letter to discredit, silence, embarrass, and/or harm their critics, including Plaintiff, Everett, and Burzynski; to divert attention from Defendants' own

**MASUD LABOR LAW GROUP**

4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

misfeasance and malfeasance; to improperly influence the Local 699 elections; to deter others from campaigning; to further discredit and/or retaliate against the Plaintiff; and for personal gain.

70.    That Defendants' defamatory statements have no basis in fact.

71.    That, in fact, Defendant Local 699 was audited routinely and no misappropriations, losses, embezzlement, improper self-payments, and/or theft of Union funds and/or member dues or similar irregularities or financial losses were discovered in the regular audits from the time period Plaintiff served in the prior administration.

72.    That Defendants were aware that the Union finances were routinely audited and, additionally, knew or should have known the above results of the audits when they authored, published, and/or distributed their malicious, false statements.

73.    That because Defendants knew Local 699 was regularly audited and that no irregularity had been found during said audits, Defendants were aware of the flagrantly untrue nature of their May 4, 2021, statements when they made and distributed them.

74.    That Defendants knowingly made their statements with actual knowledge the statements were false or, alternatively, in reckless disregard of the truth or falsity of the statements.

75.    That Defendant Fritz has since admitted the May 4, 2021, Letter was a fabrication based on no reliable evidence, meant to wrongly disparage Burzynski's prior administration and improperly influence the elections, and she has described the false defamatory accusations she and her coconspirators fabricated and published as a "hit job."[4]

76.    That Fritz admitted that Hurst, Wienecke, Chairman Jason Tuck, and other Local 699 Officers "laugh their asses off" when they talked about Plaintiff returning to her Secretary

---

[4] Specifically, one of Defendants' goals for their defamation was, in part, to wrongfully manipulate the elections so that Plaintiff would be discredited and defamed as a criminal and that Bauer and other members of Hurst's caucus/regime would be elected.

12

position after she was wrongfully terminated. Additionally, Fritz admitted Hurst racially profiled African-Americans. Further, she said it would not be safe for Plaintiff to return to her Local 699 Secretary position at the Union Hall where Local 699 Officers carry firearms.

77.     That the Local 699 failed, neglected and/or refused to provide Plaintiff with a safe place to work as evidenced, in part, by the Defendant officers' and agents' actions, their above-described statements and their use of firearms despite the lawful restriction against firearms.

78.     That, upon information and belief, after Local 699 Officers "laugh their asses off" when they talked about Plaintiff returning to her Secretary position, Local 699 further retaliated against Plaintiff and intentionally inflicted further emotional distress by communicating to her that in order to return to her Secretary position she could not exercise her lawful civil rights. Also, she would have to return to work without any assurances of a safe workplace and she would again be under the supervision or working for and/or with one or more offending Local 699 Officers and or agents including, but not limited to, Hurst, Bauer, Winiecke, Jason Stavely, Chairman Jason Tuck and others whose wrongful conduct has not been properly investigated or corrected.

79.     That, upon information and belief, Defendants have removed and/or destroyed evidence relating to Plaintiff's claims and/or other relevant confidential Union records as part of a cover up. By way of example, Hurst and Fritz made law enforcement complaints about their and/or other Local 699 officers and/or agents in the Hurst administration alleging illegal and or tortious activities regarding the handling, removal and/or destruction of Local 699's confidential files. Further, Fritz has stated that Hurst made false statements to law enforcement officers about the handling of Local 699's records alleging the records were part of an ongoing Federal Bureau of Investigation ("FBI") investigation of Local 699, and/or that Fritz was going to destroy the records or words to that effect. Additionally, Fritz has stated that Chairman Jason Tuck and others laughed

13

about union files being removed from the Union Hall and referred to it as being like the "Watergate" scandal, or words to that effect. Furthermore, upon information and belief, the new Local 699 President, Tim Maike, has made statements that the Union records and/or files are missing, or words to that effect.

80.     That Fritz sent a text message to another member of Burzynski's prior administration, Craig Everett, former Financial Secretary on or about May 15, 2021. Therein, Fritz told Everett, who was also personally defamed by Defendants' May 4, 2021, Letter, "I know ur (sic) upset with me but I would like to tell u (sic) what is really going on. Ur (sic) not in trouble I promise u (sic) that."

81.     That on or about May 6, 2021, two days after the Defendants' defamatory letter was published, UAW Region 1D Director, Steve Dawes ("Dawes") and a UAW International Board Member and supervisor for Local 699's region told the media and others that Defendants published the May 4, 2021, Letter with no proof whatsoever. (Exhibit C).

82.     That, specifically, Dawes said he was "very disturbed" Defendants had made "allegations [in the May 4, 2021, Letter] with no proof, no substance." (Ex. C).

83.     That Dawes' above statements are accurate and truthful.

84.     That the news article in which Dawes' statements appeared included a copy of the defamatory May 4 *FIREPOWER* article, thus spreading Defendants' malicious, fabricated lies to an even wider audience. (Ex. C). Additionally, the news article was also posted to the Members of the UAW Facebook page, which has over 20,000 members and is viewable nationwide.

85.     That Director Dawes also truthfully and accurately stated Local 699 was audited three times between 2013 and 2018, and that the 2018 audit had been requested by Defendants Hurst and Fritz. (Ex. C).

14

86.     That on May 21, 2021, Dawes truthfully and accurately stated to the members of Defendant Local 699, that a new audit pertaining to Defendants' May 4, 2021, allegations would be conducted, and that prior audits had shown "**NO** misappropriation or missing funds." (Exhibit D) (emphasis in original).

87.     That, on information and belief, Dawes requested or instructed one or more of the Defendants to use the official Local 699 *FIREPOWER* letterhead for his May 21, 2021, statement. Nevertheless, Defendants failed, neglected, or refused to do so and the statement was only published on with the International UAW letterhead.

88.     That, in his statement, Dawes accurately and truthfully stated that Local 699 maintained two software programs maintaining the accuracy of financial records during the time period in which Defendants allege Plaintiff misappropriated, lost, embezzled or stole Union money; that the results of prior audits are required to be read at Local 699 meetings; that the Trustees of Local 699 review the finances twice a year; and that financial reports are submitted at every Local 699 Board and Membership meeting. (Ex. D).

89.     That Dawes accurately and truthfully said these oversight and security measures had never, "in all the years noted [in the May 4, 2021, defamatory letter]," revealed any "objection or a mention of misappropriation." (Ex. D).

90.     That on June 12, 2021, Dawes sent a text message to Burzynski, truthfully and accurately stating the ongoing audit had, so far, come up "clean" and additionally, that the finished audit would show the membership that "[he], Craig [Everett], and [Plaintiff] were always clear and what [Defendants] did was wrong and reckless."

15

91.     That on June 17, 2021, Director Dawes sent a letter to Mr. Craig Everett.  Therein, Director Dawes truthfully and accurately said he was "appalled" by Defendants' false allegations which were made "with absolutely [no] proof or substance."  (Exhibit E).

92.     That, Dawes truthfully and accurately told Everett that he [Dawes] was "requesting the findings of the audits be presented in full at the following Local 699 Union meeting and a report issued to the membership to specifically address the allegations, with the facts showing these were false allegations."  (Ex. E).

93.     That, upon information and belief, as of the time of filing the instant Complaint, the results of the Local 699 audit showing Defendants' statements were false have not been presented to the full Union membership and general public.

94.     That, on information and belief, on or about July 21, 2021, Dawes addressed the new Local 699 administration (Hurst and Fritz had left office or been replaced by this time) and truthfully and accurately informed the new administration the audit was complete and had confirmed Defendants' allegations were untrue.

95.     That, in accordance with MCL § 600.2911(2)(b) and Michigan Law, Plaintiff provided Defendants with a formal retraction demand before initiating this lawsuit.

96.     That Defendants have failed, neglected, and/or refused to retract their malicious, defamatory statements despite knowledge of the statements' falsity and that Defendants' bad faith, ill will and refusal to retract the false statements significantly increases Plaintiff's injuries.

97.     That Defendants' unlawful actions constitute defamation per se.

98.     That Defendants' unlawful actions constitute defamation per se by implication.

99.     That Defendants' unlawful actions constitutes an unlawful conspiracy to defame Plaintiff.

**MASUD LABOR LAW GROUP**

4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

100.    That Defendants' unlawful actions constitute illegitimate, tortious conduct, specifically false light invasion of privacy.

101.    That Defendants' unlawful actions constitute illegitimate, tortious conduct, specifically intentional infliction of emotional distress.

102.    That Defendants' unlawful actions constitute race harassment in violation of Michigan's ELCRA.

103.    That Defendants' unlawful actions constitute race discrimination in violation of Michigan's ELCRA.

104.    That Defendants' unlawful actions constitute retaliation in violation of Michigan's ELCRA.

105.    That Defendants' unlawful actions constitute an unlawful conspiracy to discriminate/retaliate in violation of Michigan's ELCRA.

106.    That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, emotional distress, mental anguish, shock, fright, anxiety, depression, nervousness, injured feelings, lack of sleep, aggravation of pre-existing physical conditions, embarrassment, humiliation, loss of reputation and standing in the community, unwanted disparaging publicity, disruption of lifestyle, and denial of social pleasures.

## COUNT I – DEFAMATION *PER SE*

107.    That Plaintiff incorporates the allegations stated in paragraphs 1-106 above, word for word and paragraph for paragraph, as if fully restated herein.

108.    That on May 4, 2021, Defendants published and/or authorized a UAW Local 699 *FIREPOWER* letter (hereafter "defamatory letter" or "May 4 Letter").  (Ex. A).

17

109.   That the May 4, 2021, Letter is purportedly authored by Fritz, who signed it, and authorized for posting by Hurst, who also signed it.  (Ex. A).

110.   That in the May 4, 2021, Letter, Defendants made the following statements concerning the Plaintiff:

    i.   "I can say with a high degree of confidence that Generally Accepted Accounting Practices were not followed by prior administrations;"

    ii.   "I can also say that with a high degree of confidence that there are a number of red flags that point to misappropriated or otherwise simply missing funds from our membership dues under prior administrations;"

    iii.   "There appears to be money that is missing;"[5]

    iv.   "[M]issing or stolen funds;"

    v.   "If any officer encounters such red flags or indications of *illegal activity, such as theft or embezzlement . . .*" (emphasis added);[6]

    vi.   "We are reporting at this time, the suspected loss, misappropriation or embezzlement of union dues and funds;"

    vii.   "A lot of the below information is easy to verify and represents, as far as can be determined so far, *the tip of the iceberg*" (emphasis added);

    viii.   "Either prior officers and officials have not completely reported the totals to the national level or they have pooled some of the union members' reimbursement fees in these figures;"

---

[5] In the context of the May 4 Letter, the clear implication of this statement is that the "prior administration," i.e., Plaintiff, is responsible for the supposedly missing funds.

[6] Again, the implication here is that Plaintiff is responsible for supposedly missing funds.

**MASUD LABOR LAW GROUP**
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

ix. "[J]ust for March and October of 2015 the #699 reported $7,312 dollars in spending on sports tickets . . . The UAW national site states that the total for the year between all of the sports teams was $12,631 dollars;"[7]

x. "[T]he numbers don't match here.  Also, it states that the funds listed were spent from Union dues and doesn't talk about the reimbursements at all;"

xi. "The costs totaled $341,232 dollars according to the UA national.  If the funds were to be reimbursed, where did they go?  Does it look like there are reimbursements on the majority of sporting and entertainment events?"

xii. "[W]e are going to have to evaluate where that money went;"

xiii. "Then you will have to ask the individuals who collected the funds where they deposited the funds and if they did not deposit the funds where the funds went;"

xiv. "We also have the other major issue of the hall rentals.  To say nothing of inaccurate reporting of tenting totals . . . money was receipted in under prior administrations that was not supposed to be handled by anyone but the Financial Secretary;"

xv. "The Hall's debit card was handled by someone other than the Financial Secretary in prior administrations;"

xvi. "There was no rec (sic) for bookkeeping services, nor any approval to hire an accountant to do end of year taxes in prior administrations;"[8]

---

[7] Again, the implication here is that Plaintiff is responsible for supposedly missing funds.

[8] In fact, an accountant was used when Everett served as Financial Secretary, prior to Fritz's time in office, as well as an International UAW auditor.  This was in addition to the bi-annual audits conducted by Local 699's Trustees.

19

xvii.    "[T]here is also the matter of members of the previous administration paying themselves to hold workouts;"

xviii.    "I suspect, with a high degree of confidence, that money is missing and suspect embezzlement and theft from prior administrations;" and

xix.    "[T]here are] obfuscations that have passed without objection in prior administrations."

(Ex. A).

111.    That the May 4, 2021, Letter also sought to encourage others to file sham litigation against Plaintiff for alleged misappropriation, lost, embezzled and/or theft of Union funds and/or member dues. (Ex. A).

112.    That the May 4, 2021, Letter also notes that "Section 501(c)," which "prohibits the embezzlement and theft of property," "*would also apply to employees such as prior secretaries, even from another union.*" (Ex. A) (emphasis added).

113.    That the above statement directly targeted Plaintiff as she was a prior secretary from another union who served in the prior administration of President Burzynski during the time period when the alleged illegal activities occurred.

114.    That each of Defendants' statements above were, and are, false and constitute defamation *per se* because they accuse or impute to the Plaintiff the commission of criminal activity.

115.    That Defendants published their defamatory statements to third parties, i.e., members of UAW Local 699 and the general public at large, by posting the article on Facebook and various Union webpages.

**MASUD LABOR LAW GROUP**
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

116.    That, upon information and belief, Defendants also widely hand distributed the defamatory article.

117.    That, upon information and belief, Defendants have also verbally repeated the false statements noted above to third parties as part of their effort to publish the statements to the widest audience possible.  Such verbal defamatory remarks constitute slander *per se*.

118.    That Defendants made and distributed the false and malicious publication in bad faith with ill will, without any applicable privilege, qualified or otherwise, to do so.

119.    That Defendants deliberately misrepresented, manufactured, and cherry-picked hearsay statements to fabricate their false and malicious lies and withheld key evidence of the prior audits of Local 699 finances that disproved their false defamatory accusations.

120.    That Defendants knowingly made the false statements with actual knowledge of the falsity of the statements or made said false statements with reckless disregard of whether or not said statements were false.

121.    That Defendants' actual knowledge of the falsity of the statements (or at least reckless disregard thereof) is clearly evidenced by the fact the Local 699 is regularly audited, spending is reported to members, and the Local 699 Trustees review the financial reports.  None of these oversight safeguards revealed the crimes alleged in the defamatory statements Defendants made in their malicious May 4, 2021, Letter.  Defendants trumped up the accusations.

122.    That Defendants made up the accusations is also demonstrated by the fact they had no reliable evidence in the financial records themselves prior to publishing the May 4, 2021, Letter, instead recklessly choosing to give selective attention to unreliable, unverified, and external internet sources contradicted by the Local 699's own financial records and audit reports.

21

123.     That Defendants maliciously, recklessly, or negligently fabricated the accusations is also demonstrated by Fritz's admissions, including, but not limited to, remarks to Everett and others that the prior administration had done nothing wrong and the May 4, 2021, Letter was a baseless "hit job".

124.     That Defendants made up the accusations is also demonstrated by Fritz, on information and belief, telling others that Hurst ordered her to target Plaintiff and to fabricate bogus, pretextual disciplines so Local 699 could fire Plaintiff.

125.     That Defendants made up the accusations is also demonstrated by the statements made by UAW International Board Member Dawes which followed the May 4, 2021, Letter. Indeed, Dawes truthfully and accurately stated to Local 699 members, the general public, and others, that Defendants published the May 4, 2021, statements without any proof and in the face of overwhelming levels of financial oversight.

126.     That, on information and belief, in addition to the May 4, 2021, Letter, one or more of Local 699 Officers fabricated false statements to third parties that Plaintiff fraudulently used a Union member's name to rent out the Union Hall to gang members and/or that the Blacks [African-American] do drugs, alcohol, prostitution, and money laundering, and/or that Plaintiff was collecting extra money for herself from gangster parties, or words to that effect.

127.     That, in fact, Defendants intentionally fabricated the false statements in order to defame the Plaintiff and/or as part of a scheme to discredit her, embarrass and intimidate her and to improperly influence pending union elections.

128.     That "malice" exists when a statement is published with knowledge of its falsity or reckless disregard for its truth, *Ireland v Edwards*, 230 Mich App 607, 615; 584 NW2d 632 (1998), and "Fabricating a story is evidence of actual malice." *Hildebrant v Meredith Corp*, 63 F Supp 3d

**MASUD LABOR LAW GROUP**
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

732, 746 (ED Mich 2014) (citing *Mino v Clio School District*, 255 Mich App 60, 661 NW2d 586, 595 (2003).

129.     That, further, evidence that Defendants fabricated statements is sufficient to show Defendants *at the least* "should have entertained serious doubts" as to the veracity of their false statements, demonstrating they acted recklessly. *Hildebrant*, 63 F Supp 3d at 746.

130.     That Defendants acted in bad faith and further, even if Defendants profess they acted in good faith, such professions are unpersuasive "where a story is fabricated . . . the product of [the] imagination, or is based on an unverified [source]." *Smith v Anonymous Joint Enter*, 487 Mich 102, 126 n.55 (2010).

131.     That Defendants' false statements are actionable irrespective of special harm.

132.     That Defendants' false statements harmed, and continue to harm, the Plaintiff in multiple ways including, but not limited to, wrongfully lowering the Plaintiff's reputation in the community.

133.     That, indeed, just as an example of the severity of harm Defendants' malicious lies caused, several of the Facebook comments on the May 4, 2021, Letter called for Plaintiff to be thrown in prison, sued, fried, hung, and/or nailed to a wall by her buttocks.  (Ex. B).

134.     That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, emotional distress, mental anguish, shock, fright, anxiety, depression, nervousness, injured feelings, lack of sleep, aggravation of pre-existing physical conditions, embarrassment, humiliation, loss of reputation and standing in the community, unwanted disparaging publicity, disruption of lifestyle, and denial of social pleasures.

**MASUD LABOR LAW GROUP**
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

135.    In view of the forgoing, Plaintiff is entitled to actual, presumed, exemplary, punitive, and other damages in an amount to be specifically determined at trial.

## COUNT II – DEFAMATION *PER SE* BY IMPLICATION

136.    That Plaintiff incorporates the allegations stated in paragraphs 1-135 above, word for word and paragraph for paragraph, as if fully restated herein.

137.    That Michigan recognizes defamation by implication as a cognizable tort theory and a specific category of defamation.  *See, Hawkins v Mercy Health Servs Inc*, 230 Mich App 315, 329 (1998).

138.    That, only in the alternative event that Defendants' statements are not literally true or not, Defendants' statements clearly imply that the Plaintiff engaged in criminal activity.

139.    That, additionally, to the extent that any of the statements specifically pled in Count I above are found to not specifically/expressly refer to the Plaintiff, who is the former Secretary and can easily be thought of as a member of the "previous administration," said statements clearly *impute* criminal activity to the Plaintiff.

140.    That, implications aside, Plaintiff's cause of action may "succeed even without a direct showing of any actual literally false statements." *Id.* at 330.

141.    That without any justification or proof for Defendants' May 4, 2021, allegations of missing/stolen funds, the clear implication raised by the May 4, 2021, Letter is that Plaintiff is responsible for, or embezzled, the money.

142.    That, additionally, the May 4, 2021, Letter implies, if not outright states, that Plaintiff is responsible for mishandling Union Hall rentals, receipts, and the Union Hall's debit card.

24

143.    That, finally, the May 4, 2021, Letter also states Plaintiff should be, or can be, sued for these improper actions which the letter accuses her of committing.

144.    That, on information and belief, in addition to the May 4, 2021, Letter, one or more of Local 699 Officers, falsely stated to third parties that Plaintiff fraudulently used a Union member's name to rent out the Union Hall to gangs, and/or Black [African-American] people who do drugs, alcohol, prostitution, and money laundering, and/or that Plaintiff was collecting extra money for herself from gangster parties, or words to that effect.

145.    That a reasonable factfinder would conclude Defendants' statements imply a defamatory meaning.

146.    That Defendants' implications are false and defamatory.

147.    That the implications have no basis in fact.

148.    That Defendants' statements tend to lower Plaintiffs' reputation in the community.

149.    That the timing of Defendants' defamatory statements vis-à-vis the Local 699 elections shows the statements also were meant to, and had the effect of, deterring third persons from associating with the Plaintiff.[9]

150.    That Defendants knowingly made the false statements with actual knowledge of the falsity of the statements or made said false statements with reckless disregard of whether or

---

[9] It is important to note that Defendants had a motive for defaming the Plaintiff at the time of the election. Indeed, following Plaintiff's improper and discriminatory dismissal by Hurst, many members have called for her to be returned to work. In fact, a motion was made, which passed, to this effect. Moreover, on information and belief, at least one candidate during the elections claimed Plaintiff's return to work was part of his "platform". Finally, Defendants were aware Plaintiff was an integral part of the operations of the prior administration of Burzynski and Everett. Defendants sought to defame Plaintiff in the eyes of the union members and public so that these two men would be defamed if they ran against members of Hurst, Fritz and Bauer's caucus/regime, and likewise defame Plaintiff who sought to return to work.

**MASUD LABOR LAW GROUP**
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

not said statements were false, and acted negligently and with malice in failing to follow-up to determine if their defamatory statements were true before publishing them.

151.    That the fact Defendants published the false statements with actual knowledge of the falsity of the statements (or at least reckless disregard thereof) is clearly evidenced by the fact the Local 699 is regularly audited, spending is reported to members, and the Local 699 Trustees review the financial reports.  None of these oversight safeguards ever revealed anything like the defamatory accusations Defendants stated in their malicious May 4, 2021, Letter.  Defendants trumped up the accusations.

152.    That Defendants made up the accusations is also demonstrated by the statements made by Dawes which followed the May 4, 2021, Letter.  Indeed, Dawes stated to Local 699 members, the general public, and others, that Defendants published the May 4, 2021, statements without any proof and in the face of overwhelming levels of financial oversight.

153.    That, in fact, Defendants intentionally fabricated the false statements in order to defame the Plaintiff and/or as part of a scheme to improperly influence pending union elections.

154.    That, "Fabricating a story is evidence of actual malice." *Hildebrant v Meredith Corp*, 63 F Supp 3d 732, 746 (ED Mich 2014) (citing *Mino v Clio School District*, 255 Mich App 60, 661 NW2d 586, 595 (2003) (Noting evidence that a defamatory statement was "made up" may demonstrate actual malice)).

155.    That, further, evidence that Defendants fabricated statements is sufficient to show Defendants *at the least* "should have entertained serious doubts" as to the veracity of their false statements, indicating they acted recklessly. *Hildebrant*, 63 F Supp 3d at 746.

156.    That Defendants acted in bad faith, ill will, and further, even if Defendants profess they acted in good faith, such professions are unpersuasive "where a story is fabricated . . . the

**MASUD LABOR LAW GROUP**

4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

product of [the] imagination or is based on an unverified [source]." *Smith v Anonymous Joint Enter*, 487 Mich 102, 126 n.55 (2010).

157.   That Defendants' false statements are actionable irrespective of special harm.

158.   That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, emotional distress, mental anguish, shock, fright, anxiety, depression, nervousness, injured feelings, lack of sleep, aggravation of pre-existing physical conditions, embarrassment, humiliation, loss of reputation and standing in the community, unwanted disparaging publicity, disruption of lifestyle, and denial of social pleasures.

159.   In view of the forgoing, Plaintiff is entitled to actual, presumed, exemplary, punitive, and other damages in an amount to be specifically determined at trial.

## COUNT III – UNLAWFUL CIVIL CONSPIRACY TO DEFAME

160.   That Plaintiff incorporates the allegations stated in paragraphs 1-159 above, word for word and paragraph for paragraph, as if fully restated herein.

161.   That Defendants and others as yet unidentified and unnamed as Defendants engaged in concerted action to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal, unlawful, and/or tortious means.

162.   That, specifically, Defendants collaborated to wrongfully author, issue, publish or otherwise disseminate false and defamatory statements claiming or implying Plaintiff engaged in criminal conduct.

163.   That, in so doing, Defendants conspired to engage in defamatory, tortious conduct.

27

164.     That Defendants reached an understanding to act illegally, as evidenced by the fact the May 4, 2021, Letter is signed by Hurst and Fritz and is published on Local 699's official *FIREPOWER* letterhead.  (Ex. A).

165.     That, upon information and belief, Defendants' understanding to act illegally is also demonstrated by the above-described premeditated removal, shredding and/or spoliation of evidence including, but not limited to, the Union's and Defendants' materials, documents, financial records to cover-up evidence of their wrongful actions related to the May 4, 2021, defamatory letter and other tortious actions.

166.     That Plaintiff can establish the separate tort of defamation, as evidenced by Counts I and II above.

167.     That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, emotional distress, mental anguish, shock, fright, anxiety, depression, nervousness, injured feelings, lack of sleep, aggravation of pre-existing physical conditions, embarrassment, humiliation, loss of reputation and standing in the community, unwanted disparaging publicity, disruption of lifestyle, denial of social pleasures, and economic loss.

168.     In view of the forgoing, Plaintiff is entitled to actual, presumed, exemplary, punitive, and other damages in an amount to be specifically determined at trial.

## COUNT IV – FALSE LIGHT INVASION OF PRIVACY

169.     That Plaintiff incorporates the allegations stated in paragraphs 1-168 above, word for word and paragraph for paragraph, as if fully restated herein.

170.     That Defendants broadcast specific statements to third parties concerning the Plaintiff.  Plaintiff specifically refers to statements quoted in Counts I and II above.

28

171.     The Defendants knew that the above-mentioned statements were not true.

172.     That Defendants' purpose for making the above-mentioned statements was to cause Plaintiff emotional distress and to injure the Plaintiff's reputation and/or to cause others to disassociate with Plaintiff.

173.     That Defendants knowingly made false statements to a large number of people.

174.     That said false information was unreasonable and highly objectionable in that it attributed to the Plaintiff characteristics, conduct, or beliefs that were false and placed the Plaintiff in a false position.

175.     That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, emotional distress, mental anguish, shock, fright, anxiety, depression, nervousness, injured feelings, lack of sleep, aggravation of pre-existing physical conditions, embarrassment, humiliation, loss of reputation and standing in the community, unwanted disparaging publicity, disruption of lifestyle, and denial of social pleasures.

## COUNT V – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

176.     That Plaintiff incorporates the allegations stated in paragraphs 1-175 above, word for word and paragraph for paragraph, as if fully restated herein.

177.     That Defendants' actions were intentional, reckless, conducted in bad faith and with ill will.

178.     That the acts of the Defendants constitute outrageous and intolerable conduct well beyond the bounds of decency and insufferable in a civilized community.

179.     That, specifically, Defendants' above-described actions and statements in the May 4, 2021, Letter are outrageous and repugnant to a reasonable society, because they are malevolent,

**MASUD LABOR LAW GROUP**

4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

character assassination, intended to inflict severe emotional distress, and injured feelings, and the false statements were fabricated and fly in the face of substantial evidence that Defendants were aware of showing the Local 699's finances are regularly audited, routinely double-checked, and that said oversight measures had previously revealed no monetary irregularities.

180.    That, on an individual basis, it is outrageous and intolerable that each Defendant would engage in such above-described malevolent actions intended to inflict emotional distress and injured feelings and cause the May 4, 2021, Letter to be published/distributed with the knowledge the letter contained such blatant and malicious untruths.

181.    That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, emotional distress, mental anguish, shock, fright, anxiety, depression, nervousness, injured feelings, lack of sleep, aggravation of pre-existing physical conditions, embarrassment, humiliation, loss of reputation and standing in the community, unwanted disparaging publicity, disruption of lifestyle, and denial of social pleasures.

## COUNT VI – RACE HARASSMENT IN VIOLATION OF MICHIGAN'S ELCRA

182.    That Plaintiff incorporates the allegations stated in paragraphs 1-181 above, word for word and paragraph for paragraph, as if fully restated herein.

183.    That Michigan's ELCRA prohibits an employer from harassing an employee based on their race. *Malan v Gen Dynamics Land Sys, Inc*, 212 Mich App 585, 587; 538 NW2d 76 (1995).

184.    That Plaintiff is a member of a protected class by virtue of her race, African American.

185.    That Plaintiff is the first African American to serve as Secretary of the Union Hall.

30

186.     That Plaintiff was subjected to unwelcome communications and conduct on the basis of her race.

187.     That Defendant Hurst, while Plaintiff's supervisor, purposely used and directed the vile, racist "N" word multiple times to Plaintiff while she was working as Local 699's Secretary.

188.     That Hurst was aware of the horrible emotional effect this term would have on Plaintiff before he used it, as he had previously witnessed the Plaintiff's reaction to be called a "f**king N***er" by an unknown caller at the Union Hall.

189.     That neither the racist unknown caller nor Hurst's own use of the racist term were properly investigated or documented and, further, no corrective/remedial action was taken by Defendants.

190.     That Hurst was confronted by the Union members about this discriminatory act, whereupon Hurst initially denied, but later admitted to using the "N" word.

191.     That Defendant Fritz, who Winiecke acknowledged was the "racist down the hall," told Plaintiff she and her boyfriend loaded hundreds of rounds of ammunition and were "ready for the coming race war," and made statements that "Black lives don't matter" or words to that effect.

192.     That Fritz has admitted that Hurst racially profiled African-Americans.

193.     That, in addition to the communications and actions described above, Defendants also fabricated bogus disciplines to justify terminating the Plaintiff's employment and did alter her job duties.

194.     That Defendants took said adverse actions against the Plaintiff because of her race and, additionally, because she had opposed Defendants' racist comments and actions.

**MASUD LABOR LAW GROUP**
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

195.    That Defendants intended to or did create a work environment hostile towards members of Plaintiff's protected class, and Plaintiff in particular, sufficiently severe or pervasive to alter Plaintiff's conditions of employment and create an abusive working environment.

196.    That Plaintiff was treated differently than similarly situated individuals outside her protected class and Defendants Local 699, Hurst, and Fritz discriminated against Plaintiff in violation of the ELCRA by subjecting her to disparate treatment because of her race, by, among other things, terminating Plaintiff's employment.

197.    That Defendants knew of the racial discrimination, harassment, and retaliation and failed to properly investigate and take appropriate corrective/remedial action.  Indeed, Defendants' racist remarks and actions were never properly investigated, were omitted from the membership meeting minutes, and no corrective action was taken after Plaintiff complained.

198.    That Plaintiff claims any and all damages flowing from Defendants' unlawful actions, including the costs of the action and reasonable attorney fees, pursuant to MCL§ 37.2802.

199.    That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, emotional distress, mental anguish, shock, fright, anxiety, depression, nervousness, injured feelings, lack of sleep, aggravation of pre-existing physical conditions, embarrassment, humiliation, loss of reputation and standing in the community, unwanted disparaging publicity, disruption of lifestyle, and denial of social pleasures and economic loss.

## COUNT VII – RACE DISCRIMINATION IN VIOLATION OF MICHIGAN'S ELCRA

200.    That Plaintiff incorporates the allegations stated in paragraphs 1-199 above, word for word and paragraph for paragraph, as if fully restated herein.

**MASUD LABOR LAW GROUP**
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

201.    That Michigan's ELCRA prohibits an employer from discriminating against or discharging an individual because of their race.  MCL § 37.2202.

202.    That Plaintiff is a member of a protected class by virtue of her race, African American.

203.    That Plaintiff is the first African American to serve as Secretary of the Union Hall.

204.    That Plaintiff was qualified for her Union Hall Secretary position.

205.    That Hurst, Fritz, and Local 699 took hostile, adverse action against Plaintiff's employment.

206.    That Defendants fabricated bogus disciplines to justify terminating the Plaintiff and did, in fact, terminate Plaintiff's employment.

207.    That Defendants took said adverse actions against the Plaintiff because of her race.

208.    That Defendants took said adverse actions against the Plaintiff under circumstances that give rise to an inference of intentional race discrimination.

209.    That Plaintiff was treated differently than similarly situated individuals outside her protected class and Defendants Local 699, Hurst, and Fritz discriminated against Plaintiff in violation of the ELCRA by subjecting her to disparate treatment because of her race, by, among other things, terminating Plaintiff's employment.

210.    That Hurst, while Plaintiff's supervisor, purposely used and directed the vile, racist "N" word multiple times to Plaintiff while she was working as Local 699's Secretary.

211.    That Hurst was aware of the horrible emotional effect this term would have on Plaintiff before he used it, as he had previously witnessed the Plaintiff's reaction to be called a "f**king N***er" by an unknown caller at the Union Hall.

33

212.    That neither the racist unknown caller nor Hurst's own use of the racist term were investigated by Defendants.

213.    That Hurst was confronted by the Union members about this discriminatory act, whereupon Hurst initially denied, but later admitted to using the "N" word.

214.    That Fritz, who at least one individual has referred to as the "racist down the hall" in speaking to Plaintiff, personally told Plaintiff she has hundreds of rounds of homemade ammunition and is "ready for the coming race war," or words to that effect.

215.    That Fritz made this statement to Plaintiff after Fritz stated her opinion that voters should support President Trump and Plaintiff replied that she (Plaintiff) was not going to vote for President Trump in the 2020 elections due to perceived racism.

216.    That, in addition to her bellicose and racist statement about the "coming race war," Fritz also harassed Plaintiff by parking in Plaintiff's customary parking space with Trump stickers adorning her vehicle and communicating to Plaintiff that "Black lives don't matter."

217.    That Defendants terminated Plaintiff's employment for reasons which are bogus and pretextual for racial discrimination.

218.    That Defendants' reasons for taking adverse action against the Plaintiff are a pretext for unlawful discrimination.

219.    That Defendants' above-described fabricated reasons for taking adverse action against the Plaintiff have no basis in fact, were not the true motivation for the adverse action, were insufficient to justify the adverse action, and were racially discriminatory and wrongful retaliation.

220.    That Plaintiff claims any and all damages flowing from Defendants' unlawful actions, including the costs of the action and reasonable attorney fees, pursuant to MCL § 37.2802.

**MASUD LABOR LAW GROUP**
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

221.    That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, emotional distress, mental anguish, shock, fright, anxiety, depression, nervousness, injured feelings, lack of sleep, aggravation of pre-existing physical conditions, embarrassment, humiliation, loss of reputation and standing in the community, unwanted disparaging publicity, disruption of lifestyle, and denial of social pleasures.

## COUNT VIII – RETALIATION IN VIOLATION OF MICHIGAN'S ELCRA

222.    That Plaintiff incorporates the allegations stated in paragraphs 1-221 above, word for word and paragraph for paragraph, as if fully restated herein.

223.    That the ELCRA prohibits retaliation against a person because said person had opposed a violation of the Act or filed a charge or complaint under the act.  MCL § 37.2701(a).

224.    That Plaintiff engaged in activity protected by the ELCRA.

225.    That Plaintiff complained of Defendants' discriminatory conduct and racist remarks on multiple occasions.  Specifically, Plaintiff complained after Hurst used the "N" word multiple times while talking to her, opposed racist and/or discriminatory conduct at the Union Hall, and filed discrimination charges with the MDCR.

226.    That Defendants were aware of Plaintiff's protected activities.

227.    That Defendants took adverse action against the Plaintiff, including writing her up for bogus, pretextual reasons and terminating her employment, wages, benefits and falsely accusing her of criminal acts which they communicated to third parties.

228.    That Defendants also altered Plaintiff's job duties and stripped her of certain duties altogether.

**MASUD LABOR LAW GROUP**
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

229.    That Defendants' retaliatory actions were causally related to her protected activities.

230.    That Plaintiff engaging in protected activities under the ELCRA was a significant factor in Defendants' adverse employment action.

231.    That causation for Defendants' adverse employment action is demonstrated by the fact Defendants' retaliatory comments and actions took place *after* Plaintiff complained about Defendant Hurst using the "N" word and became significantly worse after Hurst was made to answer for using the racist term during a membership meeting as a result of Plaintiff's opposition to his having used the term.

232.    That causation is also demonstrated by Fritz's admission that Hurst ordered and/or bribed her to fabricate pretextual reasons to terminate Plaintiff's employment. Fritz further admitted that Hurst "set up" Plaintiff and decided to "f**k our hall secretary," and to fire her, or words to that effect. Fritz also admitted that Hurst referred to Plaintiff as "the bitch" and that she (Plaintiff) wasn't coming back, or words to that effect.

233.    That Defendants' reasons for taking said retaliatory actions are pretextual for unlawful retaliation.

234.    That Defendants' reasons for taking adverse action against the Plaintiff have no basis in fact, were not the true motivation for the adverse action, or were insufficient to justify the decision.

235.    That Plaintiff claims any and all damages flowing from Defendants' unlawful actions, including the costs of the action and reasonable attorney fees, pursuant to MCL § 37.2802.

236.    That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, emotional distress,

**MASUD LABOR LAW GROUP**
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

mental anguish, shock, fright, anxiety, depression, nervousness, injured feelings, lack of sleep, aggravation of pre-existing physical conditions, embarrassment, humiliation, loss of reputation and standing in the community, unwanted disparaging publicity, disruption of lifestyle, and denial of social pleasures.

## COUNT IX – UNLAWFUL CONSPIRACY IN VIOLATION OF MICHIGAN'S ELCRA

237.    That Plaintiff incorporates the allegations stated in paragraphs 1-236 above, word for word and paragraph for paragraph, as if fully restated herein.

238.    That the ELCRA prohibits two or more persons from aiding, abetting, compelling, or otherwise inciting a person to engage in a violation of the Act.  MCL § 37.2701(b).

239.    That Defendants engaged in concerted action to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means.

240.    That, specifically, Defendants collaborated to discriminate or otherwise retaliate against the Plaintiff.

241.    That, in so doing, Defendants conspired, aided, and/or abetted each other in accomplishing their goal of discriminating and retaliating against the Plaintiff.

242.    That Defendants reached an understanding to act illegally, as evidenced by the above-described actions and the fact Fritz has stated Hurst ordered or bribed her to target Plaintiff to be fired by fabricating bogus discipline write-ups.

243.    That Defendants reached an understanding to act illegally, as evidenced by the above-described actions including, but not limited to, the fact the May 4, 2021, Letter is signed by Hurst and Fritz and is published on Local 699's official *FIREPOWER* letterhead.

244.    That Plaintiff claims any and all damages flowing from Defendants' unlawful actions, including the costs of the action and reasonable attorney fees, pursuant to MCL § 37.2802.

37

245.    That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer economic and noneconomic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, anxiety, depression, nervousness, injured feelings, lack of sleep, aggravation of pre-existing physical conditions, embarrassment, humiliation, loss of reputation and standing in the community, unwanted disparaging publicity, loss of self-esteem and self-confidence, disruption of lifestyle, denial of social pleasures, emotional pain and suffering.

## COUNT X – DEFAMATION *PER SE*; DEFAMATION BY IMPLICATION; AND INTENTIONAL INFLICATION OF EMOTIONAL DISTRESS AGAINST DEFENDANT JASON STAVELY

246.    That Plaintiff incorporates the allegations stated in paragraphs 1-245 above, word for word and paragraph for paragraph, as if fully restated herein.

247.    That, as noted above, Plaintiff brings this instant count against Defendant Jason Stavely for defamation *per se*, defamation by implication, and intentional infliction of emotional distress. These claims are based on information and belief currently available. Plaintiff expressly reserves the right to amend this count and/or her Complaint to add allegations or legal causes against Stavely, if applicable and per the Michigan Court Rules, as new information becomes discoverable.

248.    That sometime after Plaintiff's employment was wrongfully terminated, Defendant Stavely stated to third parties that Plaintiff was using a Local 699 member's name to rent the union hall out to gang members.

249.    That, specifically, Plaintiff is in possession of a November 5, 2020, statement from Stavely wherein he declares as follows:

> I did become aware that [Plaintiff] was using a member's name on a rental to rent the hall out to gang members. She was the one that got a hold of our members.

38

Our members would contact [Plaintiff] for all hall rentals.  At that time, I believed she was renting the Hall for what they say they were renting for.

250.    That Stavely and the Local 699 failed to properly investigate these false accusations, including, but not limited to, informing Plaintiff of the charge of illegal activity or providing her an opportunity to respond, before Stavely made the false accusation as a statement of fact.

251.    That Stavely made his defamatory statements to third parties, i.e., members of UAW Local 699, via verbal and/or written statements.

252.    That Stavely's statements are entirely false and, as the statements allege or otherwise imply Plaintiff engaged in criminal activity, i.e., fraud, theft, and/or acting in concert with "gang members," said statements are *per se* defamatory.

253.    That Plaintiff adamantly and unequivocally denies ever engaging in the wrongful conduct Stavely ascribes to her.

254.    That, in fact, Local 699's union hall rentals were subject to rental agreements and rental policies which were signed by the member that is renting the hall.

255.    That the rental agreements required members to verify their seniority dates and addresses, present proof of appropriate licensure if alcohol will be consumed/sold during the rental and verify the purpose of the rental.  Further, the rental agreement specifically required the leasing union member to covenant to obey all the laws of the State of Michigan.

256.    That the rental agreement also states the Local 699 (i.e., the Lessor) will provide two security personnel during events.

257.    That, in addition to reviewing applicable rental agreements and policies with potential leasing union members, Plaintiff personally verified each renting member's status with

39

**MASUD LABOR LAW GROUP**
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

the Local 699.  Plaintiff also created a rental checklist as part of her process for handling hall rentals to further ensure the hall was rented for lawful purposes.

258.    That Stavely's defamatory statements were made in bad faith, with ill will, and without any applicable privilege, qualified or otherwise.

259.    That Stavely's defamatory comments were made with actual malice, as demonstrated by the strict rental process, the fact his defamatory comments were uttered following Plaintiff's wrongful termination, and the fact the comments were uttered while Local 699 members were seeking the truth about Plaintiff's complaints of racial discrimination, retaliation, and wrongful firing.

260.    That Stavely's false statements are actionable irrespective of special harm.

261.    That, as such, Stavely's unlawful conduct constitutes defamation *per se*.

262.    That Michigan recognizes defamation by implication as a cognizable tort and a specific category of defamation.  *See, Hawkins v Mercy Health Servs Inc*, 230 Mich App 315, 329 (1998).

263.    That, only in the alternative event that Stavely's statements are not literally true or not, his statements clearly imply that the Plaintiff engaged in criminal activity.

264.    That, additionally, said statements clearly *impute* criminal activity to the Plaintiff.

265.    That, indeed, Stavely's defamatory remarks clearly imply that Plaintiff fraudulently used a Union member's name to rent out the hall to Black [African-American] gang members who engage in criminal activities.

266.    That, implications aside, Plaintiff's cause of action may "succeed even without a direct showing of any actual literally false statements." *Id.* at 330.

40

267.     That a reasonable factfinder would conclude Stavely's statements imply a defamatory meaning.

268.     That Stavely's implications are false and defamatory.

269.     That Stavely's implications have no basis in fact.

270.     That Stavely's statements tend to lower Plaintiffs' reputation in the community.

271.     That Stavely knowingly made the false statements with actual knowledge of the falsity of the statements or made said false statements with reckless disregard of whether or not said statements were false.

272.     That, as such, Stavely's unlawful conduct constitutes defamation *per se* by implication.

273.     That Stavely's actions were intentional, reckless, conducted in bad faith and with ill will.

274.     That Stavely's actions constitute outrageous and intolerable conduct well beyond the bounds of decency and insufferable in a civilized community.

275.     That, specifically, Stavely's statements are outrageous and repugnant to a reasonable society, because they are malevolent, character assassination intended to inflict severe emotional distress, and injured feelings, and the false statements were fabricated and fly in the face of substantial evidence that the hall rental process exercised by Plaintiff was strict and subject to significant oversight measures.

276.     That Stavely's false statements harmed, and continue to harm, the Plaintiff in multiple ways including, but not limited to, wrongfully lowering the Plaintiff's reputation in the community.

41

277.   That, in accordance with MCL § 600.2911(2)(b) and Michigan Law, Plaintiff provided Stavely with a formal retraction demand before initiating this lawsuit. As of the time of filing, Stavely has failed, neglected, or refused to retract his defamatory statements.

278.   That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer economic and noneconomic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, anxiety, injured feelings, depression, nervousness, lack of sleep, aggravation of pre-existing physical conditions, embarrassment, humiliation, loss of reputation and standing in the community, unwanted disparaging publicity, loss of self-esteem and self-confidence, disruption of lifestyle, denial of social pleasures, emotional pain and suffering.

279.   In view of the forgoing, Plaintiff is entitled to actual, presumed, exemplary, punitive, and other damages in an amount to be specifically determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor and against Defendants, containing the following relief:

A.   An order directing Defendants to place Plaintiff in the position she would have occupied but for Defendants' discriminatory, retaliatory and/or otherwise unlawful treatment of her, as well as to take such affirmative action as is necessary to ensure that the effects of the unlawful employment practices and other unlawful conduct are eliminated and do not continue to harm Plaintiff;

B.   An award of damages in excess of $25,000 to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages,

**MASUD LABOR LAW GROUP**
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment.

C.      An award of damages in excess of $25,000 to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, injured feelings, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

D.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment;

E.      An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

F.      An award of exemplary and punitive damages for Plaintiff's injuries caused by the malicious wrongdoing of the Defendants.

G.      An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law, including MCL § 37.2802; and

H.      Such other and further relief as the Court may deem just and proper.

Dated this 9th day of September 2021.

MASUD LABOR LAW GROUP
Attorneys for Plaintiff

BY: _____
RICHARD R. VARY (P28517)
4449 Fashion Square Boulevard, Ste. 1
Saginaw, Michigan 48603

43

## DEMAND FOR A TRIAL BY JURY

NOW COMES Plaintiff, CHULINDRA COOKS, by and through her attorneys, Masud

Labor Law Group, and hereby demands a trial by jury on each of the above causes of action.

Dated this 9th day of September 2021.

MASUD LABOR LAW GROUP
Attorneys for Plaintiff

BY: _____
RICHARD R. VARY (P28517)
4449 Fashion Square Boulevard, Ste. 1
Saginaw, Michigan 48603
Phone:  (989) 792-4499

44

Exhibit 1



This paper shall serve all UAW members at Nexteer Automotive Site Plants. Opinions expressed in the various articles are those of individual writers and do not necessarily represent the position of Local 699.

Dear Sisters and Brothers of Local 699,

I was elected to shine a light on the inner dealings and workings of Local #699. We have been as transparent as we can be. At this point, I can say with a high degree of confidence that Generally Accepted Accounting Practices were not followed by prior administrations. I can also say that with a high degree of confidence that there are a number of red flags that point to misappropriated or otherwise simply missing funds from our membership dues under prior administrations.

Moreover, I feel a duty to report to the rest of the board officers as well as responsibility to the membership that there appears to be money that is missing.

I feel this duty as a member of the local Union #699, as well as practicality: with our current Union Insurance Policy, Ullico, cover the cost of an investigation into missing or stolen funds, as well replace the lost money itself. If any officer encounters such red flags or indicators of illegal activity, such as theft or embezzlement, and opts to do nothing about it, they can be held personally liable by any member that chooses to sue them over missing funds. If any officer is made aware of such instances of criminality and opts to do nothing, they can be held personally liable by any member that chooses to sue them over missing funds. And in such an instance, neither the Union nor its insurance policy would cover the officer or member so sued, neither for the loss nor for their legal fees.

As I said before, if the current leadership makes a claim, the investigation would likely be covered. If the current board and officers, concurrent with the incoming board and leadership opt to do nothing, they can be held personally liable by any member that chooses to sue them over missing funds. And the Union or its insurance policy would not cover the officer or member sued, neither for the loss or their legal fees.



This paper shall serve all UAW members at Nexteer Automotive Site Plants. Opinions expressed in the various articles are those of individual writers and do not necessarily represent the position of Local 699

This is our Duty to Report. We are reporting at this time, the suspected loss, misappropriation or embezzlement of union dues and funds.

A lot of the below information is easy to verify and represents, as far as can be determined so far, the tip of the iceberg.

Local 699 has reported spending to the UAW national with a total of $38,218 dollars between 2013-2018 just for sports tickets. That is between the Tigers, Lions, and Red Wings.

You can find the totals
here: https://uawaccountability.com/uaw-local/699

Either prior officers and officials have not completely reported the totals to the national level or they have pooled some of the union members' reimbursement fees in these figures. As an example, just for March and October of 2015 the #699 reported $7,312 dollars in spending on sports tickets according to the books that were examined. The UAW national site states that the total for the year between all of the sports teams was $12,631 dollars.

What is interesting is that the numbers don't match here. Also, it states that the funds listed were spent from Union dues and doesn't talk about the reimbursements at all.

(The government's link to the financials that have to be reported is also broken. https://olms.dol-esa.gov/olpdr/)

The four largest reported expenses for 2013-2018, (excluding legal expenses), alone for Local 699 according to the UAW



This paper shall serve all UAW members at Nexteer Automotive Site Plants. Opinions expressed in the various articles are those of individual writers and do not necessarily represent the position of Local 699.

national site state that they are entertainment, hotels, restaurants, and travel. The costs totaled $341,323 dollars according to the UAW national. If the funds were to be reimbursed, where did they go? Does it look like there are reimbursements on the majority of sporting and entertainment events?

We will have to add all of the totals from the books for the entertainment, hotels, restaurants, and travel which were supposedly paid back by the members. Then we are going to have to evaluate where that money went. We will also have to compare the totals from the Local 699 against the numbers reported to the national level. And then, ultimately, asking the board and any possible witnesses who collected funds. Then you will have to ask the individuals who collected the funds where they deposited the funds and if they did not deposit the funds where the funds went.

We also have the other major issue of the hall rentals. To say nothing of inaccurate reporting of renting totals along with the social/rec committee receiving half of the supposed rental fees without an accompanying e-board rec, along with legal issues that cropped up due to specific renters and their activities, money was receipted in under prior administrations that was not supposed to be handled by anyone but the Financial Secretary. The Hall's debit card was handled by someone other than the Financial Secretary in prior administrations.

There was no rec for bookkeeping services, nor any approval to hire an accountant to do end of year taxes in prior administrations.

And there is also the matter of members of the previous administration paying themselves to hold workouts, then charging the members for these same exercise workouts. Also, why were previous members allowed to possess a log in to the computer



This paper shall serve all UAW members at Nexteer Automotive Site Plants. Opinions expressed in the various articles are those of individual writers and do not necessarily represent the position of Local 699.

system after they left office?  Again, more questions than answers.

We have to ask the following questions:

How much has Local 699 actually spent on entertainment/ sporting events or other events that were to be reimbursed by the members?

Do the numbers match from Local 699 against the national level and the reports sent to the government?

Who remembers giving funds to Local 699 for the events?

Who collected the funds?  Were they receipted in?  By whom?

Where were the funds deposited?

I suspect, with a high degree of confidence, that money is missing and suspect embezzlement and theft from prior administrations.  I am making this report as we will need to have Tom Hurst, our president, make a claim with Ullico.

Section 501 of the LMDRA provides that Union Officers are fiscally responsible for the funds that are being held. In the event that they are acting adversely to the Union or its members, the officers may then be sued by the members. Union Officers generally cannot have their legal fees covered by the union unless it is highly averse to the well-being of the Union.

Section 501(c) prohibits the embezzlement and theft of property from a labor organization covered by the Labor-Management Reporting and Disclosure Act (LMRDA) (29 U.S.C. § 401, et seq.).



This paper shall serve all UAW members at Nexteer Automotive Site Plants. Opinions expressed in various articles are those of individual writers and do not necessarily represent the position of Local 6

Statutory principles are officers of and persons employed
directly or indirectly by such labor organizations.

Section 664 prohibits the embezzlement and theft of property by
any person from an employee pension or welfare benefit plan
subject to title I of the Employee Retirement Income Security
Act (ERISA). 29 U.S.C. § 1001, et seq. The statute also
prohibits embezzlement and theft from a "fund connected" with
such an employee benefit plan.

Please note that Section 501(c) would also apply to employees

such as prior secretaries, even from another union, since they
were employed by the labor organization.

In the event that Local 699's officers do nothing about this,
they can personally be held liable since it would be averse to
the UAW/ Local 699 and its members.

I observe my duty to report to you with a heavy heart, and look
forward to untangling the obfuscations that have passed without
objection in prior administrations.

Sincerely,

Rhonda Fritz
Financial Secretary/Treasurer

O.K. For Posting

Thomas Hurst
President-UAW Local 699

Exhibit 2

UAW local 699

May 4 at 2:25 PM ·

This is my responsibility as an Elected Officer of the UAW Local 699.





+2

 29

Like                          Comment                          Share

43 Comments  28 Shares

                                                              Most Relevant

  Write a comment...

  This is published, if it's not true someone better have a
          good lawyer!

          Like · Reply · 1w                                     2

  I don't care why the information just came out, I am all
          for an investigation and answers. Let's build out union
          back up and prosecute if necessary.



Like · Reply · 1w

You were elected 4-5 YEARS AGO? What have you been
doing during all of that time??? You sit at the union hall
and get paid to do what exactly...NOTHING until you're
worried about getting sent back to the shop floor?
Meanwhile, I watch men and women wal... See More

Like · Reply · 6d                                    4

Most Relevant is selected, so some replies may have been filtered out.

                              . she was elected a year
ago

Like · Reply · 6d


I hear she's not even running again. This is our
money! Why don't we let this investigating play out.

Like · Reply · 2d · Edited

                       ow well has that worked out
for y'all in the past?

Like · Reply · 2d

                                    Yeah, I hear you. Let's
learn all the facts and when everything comes
out, time to clean house. Im not the biggest
fan of the union with all the bs that goes on.
Shit, half these people when they get voted
out will just go into A & D b... See More

Like · Reply · 2d

   Write a reply...

Most Relevant is selected, so some replies may have been filtered out.

   Write a reply...



The report states that we are investigating
mismanagement of funds between the years 2013-2018. I
am curious as to why this is being reported now... in 2021,
and not earlier.

Like · Reply · 1w · Edited                             3

Most Relevant is selected, so some replies may have been filtered out.

I'm guessing the person or people who commented this actions got removed in 2018 and now with elections coming up if this administration doesn't report it they're just as liable even if they didn't do it.

Like · Reply · 1w



I think your right. Just wondering why this administration didn't report earlier.

Like · Reply · 6d



the person reporting it hasn't been in that position very long...

Like · Reply · 6d                         1



and I am sure this is something you can't just Accuse someone you have to have proof and it probably took a while to get all the proof.

Like · Reply · 6d



Write a reply...

Most Relevant is selected, so some replies may have been filtered out.

  Write a reply...



I'm skeptical of the timing of this publication. Is it possible that the prior and current "leadership" has known this for at least a few years and it's only coming out now to create the illusion that the current leadership is worthy of being elected again? 😕

Like · Reply · 1w                         1

Most Relevant is selected, so some replies may have been filtered out.



This information was disclosed at a union meeting before the current administration was elected. You would know this if you attended union meetings.

Like · Reply · 1w

Date of said meeting when this information was disclosed, please?

Like · Reply · 1w

 Write a reply...

Most Relevant is selected, so some replies may have been filtered out.

 Write a reply...

 You got names? When will they be made public?

Like · Reply · 1w                                    🙂 1

Seems like someone is trying to guide everyone's attention elsewhere. Maybe the spot light needs to be shined on the author of this letter. If its her duty to report this as an Elected official then its also her duty to bring charges on the trustees past and present for not catching this (IF IT WAS FACTUAL), thus failing to fill that obligation could be interpreted as conduct unbecoming of an Union Official? Afterall Why hasn't the Trustees came out with any of these information since 2013? They are the ones who check the Books? How many trustees has there been? How many audits has there been? This current Financial Secretary hasn't even been in office a full term and has only reported out financials what like twice because where has the meetings been? Its clear who ISNT getting my vote.

Like · Reply · 1w

    er seems they have to start with an open investigation and then if things don't add up and charges are being done I'm sure anyone in appointed positions who knew or participated in this will probably be looking at charges. Just my thoughts

Like · Reply · 6d

 Write a reply...

Missing money was spent on bidens campain bahahaha

Like · Reply · 1w                                    😆 2



I'm very disappointed,

Like · Reply · 1w     1



Hope local 699 has the money to cover the lawsuit if not true

Like · Reply · 1w



So Cookie and all other Prior officers should be sued since this happened during their regime.

Like · Reply · 1w                    5



Most Relevant is selected, so some replies may have been filtered out.



w Why did you only name the secretary who is African American and currently has an open civil rights complaint?!? "Cookie and all other Prior officers" Her name was NOT mentioned in the original post so why would you single her out by name? This comment being left up for over 20 hours (screen shot for further proof) shows her civil rights complaint is valid.

Like · Reply · 6d · Edited



Still up 6 days later

Like · Reply · 1d



Write a reply...



:r

why did you single out cookie? Something not right here.

Like · Reply · 6d                    1



er That's my question. Who had this guy single out Cookie- the only person that couldn't have had anything to do with this. She didn't print checks sign vouchers or audit the books. She didn't even start working at the hall until December 2017.

Like · Reply · 4d



...dge make it so bad he does not even work here, so how would he know anything about cookie?

Like · Reply · 4d                    1

 ...er We know what it is!

Like · Reply · 4d

 ...e they should have removed the comment immediately when her name was mentioned.

Like · Reply · 1d

 Write a reply...

Most Relevant is selected, so some replies may have been filtered out.

 Write a reply...

 CROOKED ASS PEOPLE, YES WE KNEW, & I AGREE PUT A PAUSE ON DUES TILL AN INVESTIGATION IS DONE, & NO MORE DUES TILL THEY GETT THIS CONTRACT SIGN & SEALED. HOW THE HELL, AS ELECTED OFFICIALS DO THEY AGREE WITH MANAGEMENT NOT 2 TALK 2 THE MEMBERS OF THIS UNION DOING A CONTRACT NEGOTIATION. WHO DO THEY REALLY WORK FOR. U CAN TAKE MY DUES EVERY MONTH (14) & NOT TELL THE MEMBERSHIP WHAT U ARE NEGOTIATING WITH MANAGEMENT ABOUT ON OUR BEHALF. WTF IS GO N ON 

Like · Reply · 1w                    5

 Sometimes the point isn't to make people believe the lie it's to make people fear the liar

Like · Reply · 3d

 Lock'em all up. Solidarity my ass. Real people don't steal from their "brothers & sisters". 

Like · Reply · 1w                    5

Oh wowwwww

Like · Reply · 1w

Good catch !!! Nail their asses to the wall

Like · Reply · 1w                    6

Wow, crooked ass people we already knew that though. I say that we put a pause on our dues till an investigation and results are issued.

Like · Reply · 1w · Edited                    6

a

Like · Reply · 1w

r yup that's a lot of words

Like · Reply · 1w                    1

Write a reply...

If we worked for (from 2013-2016) and paid union dues that were embezzled and misappropriated, may we be entitled to compensation??
Asking for a friend...

Like · Reply · 2d                    2

he too

Like · Reply · 1d    1

Write a reply...

Hang them high, and watch them fry.

Like · Reply · 1w                    1

I've said it before, it's like that local is run by fucking kids!



Like · Reply · 1w

Who exactly are you reporting to? The members? They
pay dues and entrust their well-being and job security to
YOU, an elected official. If there is corruption and fraud in
the union then report it to someone with authority ffs.
The local FBI office is in Bay City. The phone number is:
989-892-6525. DO SOMETHING INSTEAD OF RUNNING
YOUR MOUTH JUST BECAUSE YOU ARE UP FOR RE-
ELECTION.

Like · Reply · 6d · Edited                                    4



                          I'm sure they
have.

Like · Reply · 2d



)ave wasn't Secretary for that long, I remember someone before Craig too, who was guy who using hall and taking all trips to Florida

1d   Like   Reply



UAW local 699's Post

🖒 Like      💬 Comment      ↗ Share

😮❤️ 25

26 Shares

Most Relevant ⌄


I don't care why the information just came out, I am all for an investigation and answers. Let's build out union back up and prosecute if necessary.

10h   Like   Reply

James's Post


।d ya she accused Craig in this for sure. I've only skimmed it (at a volleyball game right now) so not sure who else specifically she was pointing fingers at

1d   Like   Reply

।d   Like   Reply

f the secretary yes, but the last financial secretary was Dave Harris. Before him was Craig. We've had drama with both positions...all positions actually lol.

1d   Like   Reply



 Dave wasn't Secretary for that long, I remember someone before Craig too, who was guy who using hall and taking all trips to Florida


taken 8 almost years for this stuff to come to light?

1d   Like   Reply

a well..if Rhonda is who found it, she hasn't been financial secretary that long. And she's basically accusing those before her...so, if they were involved, they ain't sayin shit. And with the vast amount of corruption bottom to top...they may have just flew under the radar.

1d   Like   Reply



ınd 12 ot... >

Most Relevant ⌄

So Cookie and all other Prior officers should be sued since this happened during their regime.
1h

< 1d Like Reply ...

2 😊


Anybody want to do some Jazzercise bhahaha
1d Like Reply 1 ◌

This is published, if it's not true someone better have a good lawyer!
4m




TENOR
1d Like Reply 1 ◌

Wow, crooked ass people we already knew that though. I say that we put a pause on our dues till an investigation and results are issued.
1h



Good catch !!! Nail their asses to the wall

< James's Post •••


Absolutely, there is quite a bit I think the labor board would be interested in, hell I wish we could catch the ears of the fbi, throw them all in prison. Yes I mean all. If you were in on this I wish you were going to prison.

15h  Like  Reply  6 😊😊

 Write a reply...

<      **Marie's Post**     ⋯

1d   Like   Reply



Everything single local should be totally raked. If they're clean good if they're dirty SLAM EM HARD! None come forward. They all live off us like leaches until they're caught. Then they finger point to save their necks. How can we ever gain an upper hand in contract talks when crooked scum represent us and they ( the big 3) know it? YOU CAN'T!

<      **Patti's Post**     ⋯



     ) my guess they might have seen you comment on the UAW page or in here.

7h   Like   Reply    1 ☼



   probably

7h   Like   Reply

Write a reply...



Yep...lots of reporters follow the uaw page and reach our trying to get info. Happens every time there's something "newsworthy"



&lt; UAW local 699's Post   ...

ARE NEGOTIATING WITH MANAGEMENT ABOUT ON OUR BEHALF. WTF IS GO N ON

2h   Like   Reply                    1

Lock'em all up. Solidarity my ass. Real people don't steal from their "brothers & sisters".

3h   Like   Reply

So Cookie and all other Prior officers should be sued since this happened during their regime.

5h   Like   Reply                    4

&lt; UAW local 699's Post   ...

Good catch !!! Nail their asses to the wall

6h   Like   Reply                    5

Wow, crooked ass people we already knew that though. I say that we put a pause on our dues till an investigation and results are issued.

5h   Like   Reply                    5

Embezzlement, unlawful practices, not being truthful, IMAGINE THAT... Fucking UAW has outlasted it's usefulness... Steal from membership, to cossie up to

&lt; UAW local 699's Post   ...

say that we put a pause on our dues till an investigation and results are issued.

5h   Like   Reply                    5

Embezzlement, unlawful practices, not being truthful, IMAGINE THAT... Fucking UAW has outlasted it's usefulness... Steal from membership, to cossie up to the company, in order to sqrew it's membership... What a farse the UAW has become.

2h   Like   Reply

&lt; UAW local 699's Post   ...

You got names? When will they be made public?

2h   Like   Reply

Missing money was spent on bidens campain bahahaha

3h   Like   Reply

I'm very disappointed,

3h   Like   Reply

Exhibit 3

ADVERTISEMENT

# UAW Region 1D director 'disturbed' over missing money claim at Local 699

Steve Dawes doesn't believe any money was misspent, but he plans to start an investigation



UAW Region 1D Director Steve Dawes  (WJRT)

By Terry Camp

*Updated: May. 6, 2021 at 6:08 PM EDT*

SAGINAW, Mich. (WJRT) - An investigation will now take place into whether a United Auto Workers local in Saginaw is missing money.

Two leaders from Local 699 in Saginaw took to social media to make claims that money went missing under past administrations. A regional director of the UAW believes this is not true and says politics might be behind the accusations.

"It was very disturbing to me for someone to make allegations and with no proof, no substance," said Steve Dawes, UAW Region 1D director.

The allegations were in a letter posted to UAW Local 699's Facebook page, where local union leaders Tom Hurst and Rhonda Fritz question past entertainment expenses, such as hotel stays, restaurants, travel and sports tickets totaling more than $340,000 between 2013 and 2018.

ADVERTISEMENT



NEWS   FIRST ALERT WEATHER   VACCINE   BACK TO THE BRICKS   LIVE STREAM

# FIRE POWER

## UAW LOCAL 699

This paper shall serve all UAW members at Nexteer Automotive Saginaw Plants. Opinions expressed in the various articles are those of individual writers and do not necessarily represent the position of Local 699.

Dear Sisters and Brothers of Local 699,

I was elected to shine a light on the inner dealings and workings of Local #699. We have been as transparent as we can be. At this point, I can say with a high degree of confidence that Generally Accepted Accounting Practices were not followed by prior administrations. I can also say that with a high degree of confidence that there are a number of red flags that point to misappropriated or otherwise simply missing funds from our membership dues under prior administrations.

Moreover, I feel a duty to report to the rest of the board officers as well as responsibility to the membership that there appears to be money that is missing.

I feel this duty as a member of the local Union #699, as well as practicality: with our current Union Insurance Policy, Ullico, cover the cost of an investigation into missing or stolen funds, as well replace the lost money itself. If any officer encounters such red flags or indicators of illegal activity, such as theft or embezzlement, and opts to do nothing about it, they can be held personally liable by any member that chooses to sue them over missing funds. If any officer is made aware of such instances of criminality and opts to do nothing, they can be held personally liable by any member that chooses to sue them over missing funds. And in such an instance, neither the Union nor its insurance policy would cover the officer or member so sued, neither for the loss nor for their legal fees.

As I said before, if the current leadership makes a claim, the investigation would likely be covered. If the current board and officers, concurrent with the incoming board and leadership opt to do nothing, they can be held personally liable by any member that chooses to sue them over missing funds. And the Union or its insurance policy would not cover the officer or member sued, neither for the loss or their legal fees.

UAW Local 699  (WJRT)

Dawes said Local 699 had three audits during that time period and they showed no problems, the last in 2018.

"In 2018, the audit that was requested by the same two people who put the letter out," he said.

Dawes said a website, which he claims is anti-union, has posted the financial information that is already on government documents.

"That's just general expenditures that were made from the local union that would have went through the executive board and membership approval."

"I have a duty to my membership to make sure these allegations are first of all, false, and if they are maliciously sent out there for someone's personal gain, or being driven by a third party, we need to get to the bottom of it and set the record straight," Dawes said.

Hurst, who signed that letter, said he did not want to comment further on the missing money allegations.

Meanwhile, Hurst said Local 699 is getting close to another tentative agreement for its workers at Nexteer Automotive. The union voted down a tentative deal in February.

*Copyright 2021 WJRT. All rights reserved.*

**Around The Web**

**The Scene That Made American Pickers Cancel Frank Fritz**
Film Oracle

**[Pics] At 80, Anthony Fauci Is Still Together With His Partner**
networth magazine

**Research Ludington Moving Companies**
Yahoo Search

**[Pics] Sandra Bullock's Son Is All Grown Up & He Might Look Familiar To You**
Life Indigo

**[Pics] Michael Strahan's Partner Might Look Familiar To You**
MortgageAfterLife

**[Pics] This Is Maureen McCormick At Age 64**
Boredom Treatment

**[Pics] Meet Jason Whittle, Patrick Swayze's Son**
Medicare Granny

**[Pics] Inside Joel Osteen's Mansion Where He Lives With His Partner**
Hollywood Tale

Exhibit 4



UAW REGION 1D

Steve Dawes, Director ◆ Scott Zuckschwerdt, Assistant Director

1940 W Atherton Road, Flint, Michigan 48507-2201
Phone: 810.767.0910 ● Fax: 810.767.5807

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA – UAW

RORY L. GAMBLE, *PRESIDENT*          RAY CURRY, *SECRETARY-TREASURER*
VICE-PRESIDENTS: TERRY DITTES • CINDY ESTRADA • GERALD KARIEM

May 21, 2021

To the Members and Retirees of Local 699:

In response to the allegation of misappropriation and missing funds by a past Local Union administration as outlined in *Local 699 Fire Power*, posted on or about May 4, 2021, and signed by President Thomas Hurst and Financial Secretary Ronda Fritz, I feel it is my responsibility, as your Regional Director, to take these allegations seriously.

I have requested an audit for the time period of January 1, 2019, to present, as well as a review of prior audits covering July 1, 2012 through June 30, 2017, and April 1, 2017, through December 31, 2018.

These prior audits show **NO** misappropriation or missing funds. In fact, Local 699, during these time frames, had two software programs that maintained the financial records at Local 699 (KI and Roberts Custom Software).

Furthermore, our initial investigation shows that there are no facts to support the claims of the alleged misappropriated/missing funds. All prior audits are required to be read at the Local Membership Meetings upon the audit's conclusion.

In accordance with Local 699 Bylaws, Trusties of Local 699 review the finances of the local twice a year. In addition, a Financial Report is submitted at every Local 699 Board and Membership meeting that contains all expenditures and income. Not once, in all the years noted,  was there an objection or a mention of misappropriation.

I will share with you a few brief examples of what has been clarified so far and will be reviewed in the audits.

- It is alleged approximately $38,000 was spent on sporting event tickets.
  - These expenditures were voted on by the Local Union Executive Board and the Membership at a membership meeting. They were then offered to the Retirees, **and** or membership, for purchase to enjoy a Local 699 Day of fellowship and comradery at the park. No active Local 699 members were given free sporting event tickets.
- It is alleged $341,000 was spent for hotels, restaurants, and travel.

○  These expenditures were voted on by the Local Union Executive Board and the Membership at a membership meetings. They would include, but are not limited to the following Union Meetings and Conferences:

- Astor Crown Hotel – International Union Financial Officers' Training
- Bally's Hotel – International Union Skilled Trades Conference
- Grand Traverse Resort – Regional Leadership and Standing Committee Conferences
- Kezysiak's Restaurant – Retiree luncheons at Retiree meetings and Christmas Dinners—paid from the Retiree Fund.
- Marriott Wardman Hotel – National CAP Conference

As your Director, I am committed to finding the facts of these allegations and will keep you posted on our findings.

In solidarity,

Steve Dawes

SDdr:opeiu494afl-cio

# Exhibit 5



**UAW REGION 1D**

**Steve Dawes,** Director ◆ **Scott Zuckschwerdt,** Assistant Director

1940 W Atherton Road, Flint, Michigan 48507-2201

Phone: 810.767.0910 ● Fax: 810.767.5807



**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA – UAW**

**RORY L. GAMBLE,** *PRESIDENT*          **RAY CURRY,** *SECRETARY-TREASURER*

VICE-PRESIDENTS: TERRY DITTES • CINDY ESTRADA • GERALD KARIEM

June 17, 2021

Craig Everett
2397 Anderson Road
Saginaw, MI 48603

Dear Brother Everett:

I am in receipt of your letter dated June 2, 2021. When I received a copy of the Local 699 Fire Power, dated May 4, 2021, I was appalled at the allegations made by two Local 699 Officials. On May 6, 2021, I went public and said, I was very disturbed that these allegations were being made with absolutely to proof or substance. In fact, all audits covering 2013 thru 2018 show <u>**NO**</u> misappropriation or missing funds.

On May 6, 2021, I informed Local 699 President Tom Hurst and Financial Secretary Rhonda Fritz, by registered letter, that I had requested a <u>**full**</u> audit from January 1, 2019, to present and a review of previous audits from 2013 to 2018.

On May 21, 2021, I sent both Rhonda and Tom, by registered letter, a letter addressed to the Local 699 membership and retirees stating our initial investigation shows no facts to support their claims, and in fact, prior audits from July 1, 2012, thru June 30, 2017, and April 1, 2017, thru December 31, 2018, shows <u>**NO**</u> misappropriation or missing funds.

As you are aware, Brother Everett, Local 699 utilizes two different software programs that maintain the financial records (KI and Robert's Custom Software), as well as having three trustees that do independent audits of the Local's finances every (6) six months. The local finances are also forwarded to the Federal Government via LM2 reporting documents. The local financial report is reported out at Local Union Meetings. Again, at <u>**NO**</u> time has there been any record of any reports of financial misconduct during the time frame of 2013-2018. The reviews and audit are almost finished, and I am confident the findings will be as they were with the original audits.

As your Regional Director, it is my responsibility to take these allegations very seriously and to set the record straight with truth and facts.

I will be requesting the findings of these audits be presented in full at the following Local Union meeting and a report issued to the membership to specifically address the allegations, with the facts showing these were false allegations.

If you have any other questions, please feel free to call me.

In solidarity,

Steve Dawes

SDdr:opeiu494afl-cio